Gordon S. SORRELL, Jr. and June M.
Sorrell, Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent–Appellant.

No. 88–7331.

United States Court of Appeals,
Eleventh Circuit.

Sept. 1, 1989.

William S. Rose, Jr., Gary R. Allen, Asst. Attys. Gen., Ann Belanger Durney, Francis M. Allegra, U.S. Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellant.

Henry H. Hutchinson, Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for petitioners-appellees.

Before FAY and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This case presents the question of whether the pre-opening expense doctrine applies to deductions under § 212 of the Internal Revenue Code. The Tax Court held that the

investor services fee paid by a limited partnership prior to commencing business operations could be deducted currently. Because we hold that the pre-opening expense doctrine applies under these circumstances to bar current deductibility, we reverse.

## I. BACKGROUND

The relevant facts in this case are not in dispute. Gordon S. Sorrell, one of the appellants,[1] held general and limited partnership interests in five Alabama limited partnerships during the relevant tax years, 1977 and 1978. Each limited partnership was formed to develop and operate a residential apartment complex located in Mobile, Montgomery, or Tuscaloosa, Alabama. Sorrell also controlled Southern Housing Partnerships, Inc. (SHP), during this period. SHP was the managing general partner of each of these limited partnerships.

During 1977, one of the limited partnerships, Woodmere Apartments, Ltd., paid SHP $15,000 as an investor services fee. The investor services fee related to SHP's supervision of the property manager of the apartments, the duties of which included day-to-day management, reviewing and correcting the annual budgets, performing accounting, coordinating matters with the Department of Housing and Urban Development, and communicating with the limited

partners. The apartments themselves were not occupied until sometime in 1978. Woodmere, the limited partnership, deducted the total amount of the fee as a guaranteed payment under § 707(c)[2] of the Internal Revenue Code of 1954 ("Code").[3] *See generally Cagle v. Commissioner,* 539 F.2d 409, 413–14 (5th Cir.1976) (discussing application of § 707(c)).[4] Sorrell claimed his distributive share of Woodmere's taxable loss on his 1977 return.

The Internal Revenue Service disallowed Sorrell's share of the loss to the extent it reflected the deduction of the fee, claiming that this amount was a capital expenditure subject to amortization. The IRS contended that, under the "pre-opening expense" doctrine, expenditures made prior to the commencement of the taxpayer's trade or business must be capitalized. Disagreeing, Sorrell petitioned the Tax Court for a determination of the amount's deductibility. The Tax Court determined that Woodmere was not actively engaged in a trade or business in 1977, because the apartments were not occupied until 1978. Thus, Woodmere's intended activity of operating a rental apartment complex had not yet begun and it could not take a deduction in 1977 for trade or business expenses under § 162(a).[5] However, the court held that the investor services fee was currently de-

1. June M. Sorrell, Gordon Sorrell's wife, is also an appellant, due to her having filed a tax return jointly with her husband in 1977.

2. Internal Revenue Code of 1954 (26 U.S.C.):
   SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP
   (a) *Partner Not Acting in Capacity as Partner.—*
   (1) *In general.—*If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.
   . . . .
   (c) *Guaranteed Payments.—*To the extent determined without regard to the income of the partnership, payments to a partner for services of the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and

section 162(a) (relating to trade or business expenses).

3. While the Internal Revenue Code of 1954 has been amended and been redesignated the Internal Revenue Code of 1986, the tax years relevant to this appeal fall before the revision. All references in this opinion to the Internal Revenue Code will be to the Code of 1954, unless otherwise specified. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, § 2, 100 Stat. 2085.

4. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

5. SEC. 162. TRADE OR BUSINESS EXPENSES
   (a) *In General.—*There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . .

ductible under another provision, § 212(2).[6] The Tax Court reasoned that, although the pre-opening expense doctrine would bar deductions for similar payments under § 162(a) of the Code, the pre-opening expense doctrine does not apply to amounts deductible under § 212. Because the fee related to the management of the property held with the purpose of eventually producing income, the court held, it was a currently deductible expense under § 212(2). 53 T.C.M. (CCH) 1362, 1987 Tax Ct. Memo LEXIS 351 (1987).

The IRS appealed the Tax Court's determination with respect to the investor services fee.[7] Thus, the question before this court on appeal is whether an expense, incurred prior to the commencement of the taxpayer's business operations, may be deducted currently under § 212 of the Internal Revenue Code.[8]

## II. DISCUSSION

■ Courts have consistently held that § 162(a), which provides for the deductibility of ordinary and necessary expenses in carrying on a trade or business, does not allow current deductions for expenses incurred by a taxpayer prior to beginning business operations. *See Johnsen v. Commissioner*, 794 F.2d 1157, 1160 (6th Cir. 1986) (citing cases); Buell, *Business Startup Costs: Analyzing and Planning for Current Deductibility*, 43 J. Tax'n 278, 278 (1975). The requirement that these

expenditures be capitalized is known as the "pre-opening expense" doctrine.[9] The pre-opening expense doctrine has two premises. First, courts have reasoned that prior to the business's beginning to operate as a going concern, the taxpayer is not "engaged in carrying on any trade or business," pursuant to the express requirement § 162(a). *Johnsen v. Commissioner*, 794 F.2d at 1160–61; *see, e.g., Aboussie v. United States*, 779 F.2d 424, 428 (8th Cir. 1985); *Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir.), *vacated on other grounds*, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143 (1965) (per curiam). Second, courts have also articulated as an independent rationale that expenses incurred during the pre-opening period are part of the cost of acquiring the capital asset; as such they are not ordinary business expenses but rather capital expenditures. *Johnsen v. Commissioner*, 794 F.2d at 1161.[10]

■ Sorrell argues that the pre-opening expense doctrine is inapplicable to § 212. Section 212 provides an alternate avenue for the deduction of ordinary and necessary expenses incurred in certain types of income-producing activities not covered by § 162(a). Under § 212(2), expenses incurred for the management, conservation, or maintenance of property held for the production of income are deductible, even though such activity does not constitute "carrying on any trade or business" and thus the expenses attributable to it would

**6.** SEC. 212. EXPENSES FOR PRODUCTION OF INCOME
   In case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
   (1) for the production or collection of income;
   (2) for the management, conservation, or maintenance of property held for the production of income; or
   (3) in connection with the determination, collection, or refund of any tax.

**7.** This court has jurisdiction of the appeal from the Tax Court pursuant to § 7482 of the Code, 26 U.S.C. § 7482.

**8.** Because of our disposition of this issue, we need not reach the second issue raised on appeal by the IRS, namely whether guaranteed

payments pursuant to section 707(c) of the Code can be deducted under section 212.

**9.** *See, e.g., Johnsen v. Commissioner*, 794 F.2d at 1160; *Hoopengarner v. Commissioner*, 80 T.C. 538, 543 (1983), *aff'd by unpublished opinion*, 745 F.2d 66 (9th Cir.1984). *See also* Comment, *Hoopengarner v. Commissioner Revisited: Does the Tax Reform Act of 1984 Solve the Pre-Opening Expense Problem?*, 4 Va.Tax Rev. 141, 141 (1984).

**10.** *See Madison Gas & Electric Co. v. Commissioner*, 633 F.2d 512, 517 (7th Cir.1980); *Richmond Television Corp. v. United States*, 345 F.2d at 907; *Graybeal v. Commissioner*, 39 T.C.M. (CCH) 734 (1979). *See also* Fleischer, *The Tax Treatment of Expenses Incurred in Investigation for a Business or Capital Investment*, 14 Tax L.Rev. 567, 594–96 (1959).

not be deductible pursuant to § 162. *Brown v. United States*, 526 F.2d 135, 138 (6th Cir.1975). Sorrell's argument hinges on this key distinction between §§ 162 and 212, i.e., the latter's lack of a "trade or business" requirement. Specifically, Sorrell contends that the pre-opening expense doctrine is based on the § 162 requirement that the taxpayer be engaged in a trade or business in order to deduct any expenses. Because § 212 lacks any such requirement, Sorrell argues, the pre-opening expense doctrine cannot apply to § 212.

That reasoning has been accepted by the Tax Court in *Hoopengarner v. Commissioner*, 80 T.C. 538 (1983), *aff'd by unpublished opinion*, 745 F.2d 66 (9th Cir.1984). In *Hoopengarner*, the taxpayer had a leasehold interest in a plot of undeveloped land, for which he paid a yearly rent due in advance. The taxpayer was to construct and operate an office building on the land, both of which would finally revert to the lessor. While the taxpayer engaged in 1976 in some activities in anticipation of renting the building, they did not amount to carrying on the rental business. Thus, the IRS disallowed the taxpayer's deduction of the 1976 lease payment on the ground that it was a pre-opening expense. The Tax Court, in a 10–8 split of the members of the court, reversed. As Sorrell argues before us, the Tax Court held that the pre-opening expense doctrine "has no applicability in section 212 context," because of § 212's lack of a trade or business requirement. *Hoopengarner v. Commissioner*, 80 T.C. at 543. Because the tax-

payer's ownership of the lease was held to generate income in the near future, the lease payment was deductible.

*Hoopengarner*, however, has not been well-received. All four courts of appeals to publish opinions on the issue have refused to follow it.[11] *Fishman v. Commissioner*, 837 F.2d 309 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988); *Lewis v. Commissioner*, 861 F.2d 1232, 1233 (10th Cir.1988); *Johnsen v. Commissioner*, 794 F.2d 1157, 1158 (6th Cir.1986); *Aboussie v. United States*, 779 F.2d 424, 428 n. 6 (8th Cir.1985). After considering the question closely, we join the several courts of appeals in declining to follow *Hoopengarner*.[12]

Several reasons, in addition to the force of the foregoing precedent, persuade us to join these courts of appeal. We read the legislative history of § 212 as strong support for this position. Prior to the enactment of the predecessor of § 212, expenses incurred in connection with income-producing nonbusiness property were not currently deductible, while similar business-related expenses were. The predecessor of § 212 was enacted to remedy this disparity. "The purpose of ... section 212 was to create a parity of treatment between such nonbusiness expenses and similar business expenses which had long been deductible." *Johnsen v. Commissioner*, 794 F.2d at 1161 (quoting *Brown v. United States*, 526 F.2d 135, 138 (6th Cir.1975)).[13] As a matter of statutory construction, it is well settled that §§ 162(a) and 212 are to be considered *in pari materia*. *Woodward v. Commis-*

---

**11.** *Hoopengarner* was, of course, affirmed by the Ninth Circuit. However, the affirmance was by unpublished opinion, and under Ninth Circuit Rule 36–3, an unpublished disposition may not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel. Thus, *Hoopengarner's* authority as a precedent of the Ninth Circuit is limited.

**12.** We hold that the pre-opening expense doctrine applies in the context of the provision at issue in this case, § 212(2) (expenses incurred "for the management, conservation, or maintenance of property held for the production of income"). In this case, the Tax Court found that the instant expenses related to the management of the property but would not be deductible if the pre-opening expense doctrine were

applicable. 1987 Tax. Ct. Memo LEXIS 351 at 46–47. Thus, we need express no opinion on the details of how the pre-opening expense doctrine applies, or on the nature of expenses which must be capitalized, under the pre-opening expense doctrine. *See* Internal Revenue Code of 1984, § 195(c) (defining start-up expenses); *see generally Johnsen v. Commissioner*, 794 F.2d at 1160 (listing cases dealing with pre-opening expenses).

**13.** *See also* Sylva, *Tax Planning: Raising the Case Again for Deductibility of Promotional Expenses*, 57 Taxes 456, 475; H.Rep. No. 2333, 77th Cong., 2d Sess. at 75 (1942) (predecessor statute to § 212 subject to all the restrictions and limitations of predecessor of § 162(a)).

*sioner*, 397 U.S. 572, 575 n. 3, 90 S.Ct. 1302, 1304–1305 n. 3, 25 L.Ed.2d 577 (1970); *see also Fishman v. Commissioner*, 837 F.2d 309, 311 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988); *Johnsen v. Commissioner*, 794 F.2d at 1162 ("the restrictions and qualifications applicable to the deductibility of trade or business expenses are also applicable to expenses covered by section 212"). Under this reasoning, the pre-opening expense doctrine applied to § 162 should equally be applicable to § 212.

■ Refusing to apply the pre-opening expense doctrine to § 212(2) would also frustrate the congressional intent not to allow individuals a greater opportunity to deduct expenses under § 212 than a corporation could under § 162(a). *Johnsen v. Commissioner*, 794 F.2d at 1163; *see* B. Bittker and J. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 5.03 at 5–9 n. 14 (4th ed.1979). Corporations may not take deductions under § 212. *Johnsen v. Commissioner*, 794 F.2d at 1162; *Fishman v. Commissioner*, 837 F.2d at 312. Therefore, to allow individuals to deduct pre-opening expenses under § 212, while neither corporations nor individuals could do so under § 162, would frustrate congressional intent. *See Fishman v. Commissioner*, 837 F.2d at 313 ("it would be absurd if a partnership that built a shopping center could deduct its start-up costs but a corporation could not").[14]

■ We also conclude that the position urged by the taxpayer would frustrate the operation of § 263 of the Code, 26 U.S.C. § 263 (capital expenditures not currently deductible). In general, an expenditure is capital or current depending on the nature of the expense; thus, expenses related to the creation or acquisition of a capital asset are capital expenditures. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 12, 94 S.Ct. 2757, 2764, 41 L.Ed.2d 535 (1974); *Wood-*

*ward v. Commissioner*, 397 U.S. at 576, 90 S.Ct. at 1305. It follows that "start-up" or "pre-opening" expenses are capital in nature, given that they spring from the taxpayer's efforts to create or acquire a capital asset. *Richmond Television Corp. v. United States*, 345 F.2d at 907–08. *See also Johnsen v. Commissioner*, 794 F.2d at 1162 ("An immediate deduction for expenses incurred before an enterprise has begun actual business operations is inappropriate because the expenses are part of the cost of establishing the enterprise"). Under either § 162(a) or § 212, therefore, the pre-opening expense doctrine properly acts to prevent the current deduction of expenditures that are more correctly capital in nature.

Indeed, § 263 highlights the basic flaw in the taxpayer's position. Sorrell's position focuses only on the first rationale underlying the pre-opening expense doctrine—i.e., that pre-opening expenses are not deductible currently because, before beginning to operate as a going concern, the taxpayer is not engaging in a trade or business. Sorrell turns a blind eye to the second rationale for the doctrine: that pre-opening expenses are not deductible currently because they represent the cost of acquiring capital asset. Most commentators to deal with the subject concur with this second rationale. *See* Buell, *Business Start Up Costs: Analyzing and Planning for Current Deductibility*, 43 J. Tax'n 278, 278 (1975); Comment, *Hoopengarner v. Commissioner Revisited: Does the Tax Reform Act of 1984 Solve the Pre-opening Expense Problem?*, 4 Va.Tax Rev. 141, 144 n. 18 (1984); *cf.* Fleischer, *The Tax Treatment of Expenses Incurred in Investigation for a Business or Capital Investment*, 14 Tax L.Rev. 567, 580–83 and 596 (1959) (critiquing pre-opening expense doctrine as applied to § 212(1) and where preparation to find an income-producing asset is unsuccessful).

14. Also, refusing to apply the pre-opening expense doctrine to § 212 creates disparity between a taxpayer who creates a business and the taxpayer who buys a business. While the former taxpayer would be allowed to deduct any start-up costs, the latter is required to capitalize the "going concern value" of the business, part of which reflects previous start-up expenses. *See Northern Natural Gas Co. v. United States*, 470 F.2d 1107, 1109–10 (8th Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2773, 37 L.Ed.2d 398 (1973); *Commissioner v. Seaboard Finance Co.*, 367 F.2d 646, 649–50 (9th Cir.1966).

We also find persuasive the import and legislative history of another section of the Code, § 195.[15] Section 195, enacted in 1980 and amended in 1984,[16] allows corporations and individuals to capitalize start-up expenses, amortizing them over a period of sixty months or more. If individuals could have taken a current deduction of start-up expenses under § 212, which would almost always be preferable to a taxpayer, *Fishman v. Commissioner*, 837 F.2d at 313, allowing them to amortize the expenses would have been pointless. *Id.; Johnsen v. Commissioner*, 794 F.2d at 1163.

Furthermore, the legislative history of § 195 indicates that Congress believed that pre-opening expenses were not currently deductible under §§ 162(a) or 212. The Senate report accompanying § 195 explained that

> [u]nder present law, ordinary and necessary expenses paid or incurred in carrying on a trade or business, or engaging in a profit-seeking activity, are deductible. Expenses incurred prior to the establishment of a business normally are not deductible currently since they are not incurred in carrying on a trade or business *or while engaging in a profit-seeking activity.*

S.Rep. No. 1036, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad. News 7293, 7300 (emphasis added). *See also id.* at 7301 ("the term 'startup costs' refers to expenses which would be deductible currently if they were incurred after the commencement of the particular business operation to which they relate"). While Congress's later view as to the meaning of pre-existing law does not seal the outcome when addressing a question of statutory interpretation, it should not be discounted when relevant. *Johnsen v. Commissioner*, 794 F.2d at 1163; *see Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596, 100 S.Ct. 800, 813–814, 63 L.Ed.2d 36 (1980). *But see United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960).

Sorrell attempts to dilute the force of the legislative history by emphasizing that

---

**15.** 26 U.S.C. § 195 [As Amended.]

(a) *Capitalization of expenditures.*—Except as otherwise provided in this section, no deduction shall be allowed for start-up expenditures.

(b) *Election to Amortize.*—

(1) *In general.*—Start-up expenditures may, at the election of the taxpayer, be treated as deferred expenses. Such deferred expenses shall be allowed as a deduction prorated equally over such period of not less than 60 months as may be selected by the taxpayer (beginning with the month in which the active trade or business begins).

(2) *Dispositions before close of amortization period.*—In any case in which a trade or business is completely disposed of by the taxpayer before the end of the period to which paragraph (1) applies, any deferred expenses attributable to such trade or business which were not allowed as a deduction by reason of this section may be deducted to the extent allowable under section 165.

(c) *Definitions.*—For purposes of this section—

(1) *Start-up expenditures.*—The term "start-up expenditure" means any amount—

(A) paid or incurred in connection with—

(i) investigating the creation or acquisition of an active trade or business,

(ii) creating an active trade or business, or

(iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and

(B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

The term "start-up expenditure" does not include any amount with respect to which a deduction is allowable under section 163(a), 164, or 174.

(2) *Beginning of trade or business.*—

(A) *In general.*—Except as provided in subparagraph (B), the determination of when an active trade or busies begins shall be made in accordance with such regulations as the Secretary may prescribe.

(B) *Acquired trade or business.*—An acquired active trade or business shall be treated as beginning when the taxpayer acquires it.
....

**16.** Congress definitively foreclosed the position of the Tax Court in *Hoopengarner* with the 1984 amendment of § 195, which operates prospectively. The amended provision prohibits the current deduction of start-up expenditures, and includes expenditures associated with the activities described in § 212. *Johnsen v. Commissioner*, 794 F.2d at 1163 n. 3.

**490**

Congress's enactment of § 195 operated prospectively. However, the prospective effect does not undermine the weight of the legislative history as an indication of Congress's understanding of the prior law. Congress's disagreement with the outcome in *Hoopengarner*, evidenced by the 1984 legislative reversal of the case, bolsters the argument that Congress understood the pre-opening expense doctrine to apply to § 212 and acted to resolve the judicial confusion created by *Hoopengarner*. *See* Senate Finance Committee, Deficit Reduction Act of 1984, Explanation of Provisions, 98th Cong., 2d Sess. at 282 (S. Print 98–169 (Vol. 1) 1984). While Sorrell points to language in the 1984 committee report noting that the "present law is unclear whether a specific item should be capitalized, expensed, or amortized as provided in section 195," we do not understand this to mean that *Congress'*s viewpoint was unclear, especially in light of the abovementioned legislative history. *Id.* Instead, the context of that passage makes evident that it relates to the fact that decisions such as *Hoopengarner* had intervened since the provision's 1980 enactment, presenting conflicting applications of the pre-opening expense doctrine. *See* Staff of the Joint Committee on Taxation, 98th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 295–96 (Comm. Print 1984).[17]

### III. CONCLUSION

In light of the overwhelming case law, the clear indications in the legislative history of the relevant provisions, and the independent capital asset rationale for the pre-opening expense doctrine, we conclude that the pre-opening expense doctrine applies in the context of expenditures under § 212(2). Therefore, the investor services fee paid by the limited partnership, which the Tax Court found to be incurred before the business began operations, was not currently deductible.

REVERSED.

---

17. Sorrell also argues that even if the pre-opening expense doctrine is applicable, the Tax Court explicitly made a finding of fact that the investor services fee was a current expense. We disagree. To the contrary, the Tax Court judge clearly held that if the pre-opening expense doctrine applied to § 212, the fee would not be deductible currently because the apartments were not occupied until later.

Sorrell also contends that during the relevant tax year Woodmere, the limited partnership, was already engaged in a trade or business. Thus, Sorrell contends, the investor services fee was deductible under § 162(a). However, implicit in the Tax Court's conclusion that the pre-opening expense doctrine would bar deduction of the expense under section 162(a) is the finding that Woodmere was not yet engaged in a trade or business. *See Mayrath v. Commissioner*, 357 F.2d 209, 212–13 (5th Cir.1966) (whether taxpayer is engaged in a trade or business is a question of fact). That finding is not clearly erroneous. *See generally Richmond Television Corp. v. United States*, 345 F.2d at 907 (discussing substantive standard); *id.*, (affirming 41 T.C. 582, 589–90 (1964)) (same).

Sorrell's other arguments on appeal are without merit and warrant no discussion.