T.C. Summary Opinion 2020-2

UNITED STATES TAX COURT

JAMES GORDON PRIMUS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20640-17S.                    Filed January 7, 2020.

James Gordon Primus, pro se.

<u>Bryon M. Huang</u> and <u>Gennady Zilberman</u>, for respondent.

SUMMARY OPINION

COLVIN, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.

---

[1]Section references are to the Internal Revenue Code in effect at all relevant
times.  We round all monetary amounts to the nearest dollar.  Petitioner resided in
(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined that petitioner had deficiencies of $45,116 for 2012 and $41,001 for 2013. The issue for decision is whether expenses petitioner paid in those years in anticipation of the production of maple syrup and blueberries were nondeductible startup expenses. We hold that they were.

## Background

Some of the facts have been stipulated and are so found. During the years at issue, 2012 and 2013, petitioner lived in New York, where he worked as an accountant at a large accounting firm.

## A.  The Quebec Property

During 2010 and 2011 petitioner viewed several properties for sale in southwest Quebec. He observed that one of those properties, consisting of 266 acres, contained almost 200 acres of maple trees,[2] including more than enough mature maple trees to produce maple syrup commercially. Petitioner's mother

---

[1](...continued)
Quebec, Canada, when he filed the petition.

[2]Maple syrup producers refer to a grove or forest comprising maple trees as a "maple bush". We have used that phrase occasionally herein.

acquired the property in September 2011,[3] and petitioner maintained constructive ownership from September 2011 throughout the years at issue.[4]

In addition to maple trees, the property included areas with other species of trees, overgrown pastures, and hay fields; and 12 acres suitable for growing crops. The property also contained various improvements, e.g., a main house, two apartments, a garage, a barn, a horse riding arena, and a building with a pool and a gymnasium.

1.     Petitioner's Maple Trees and Plans To Produce Maple Syrup

When petitioner purchased the property, most of the maple trees were large enough to produce sap.[5] Before collecting sap and producing syrup, petitioner wanted to thin the maple bush, which would cause the trees to produce more and better sap, and install a system of pipes (pipeline) to collect sap. Petitioner would not be able to thin the maple bush after he installed the pipeline to collect sap. He began thinning the maple bush in 2011 and continued thinning in the years at

---

[3]To buy property in Quebec the buyer must meet a residency test. Petitioner's mother qualified, but petitioner, who lived in New York, did not.

[4]For convenience we will treat the acquisition in September 2011 as petitioner's acquisition.

[5]Before sap can be collected from maple trees, the trees have to reach a certain diameter to ensure the tree can withstand the strain caused by collecting sap.

issue.  In 2015 he began installing the pipeline and purchasing the equipment needed to produce syrup from sap.  In 2016 he started to modify the barn to house the equipment.  In 2017 he began collecting sap and producing maple syrup.  He sold 18,000 pounds of maple syrup in 2017.

### 2.    Petitioner's Plans To Produce Blueberries

When petitioner acquired the property, he also decided to produce blueberries.  In 2012 and 2013 he cleared the areas where he planned to plant blueberry bushes.  Petitioner ordered 2,000 blueberry bushes in 2014 and planted them in 2015.  Petitioner had not harvested any blueberries as of the time of trial.

### B.    Petitioner's 2012 and 2013 Tax Returns

Petitioner timely filed his Forms 1040, U.S. Individual Income Tax Return, for 2012 and 2013.  On petitioner's Schedule F, Profit or Loss From Farming, for 2012 he reported $201,881 in total expenses (including $162,958 for repairs and maintenance, $7,454 for taxes, and $6,610 for utilities).  On his Schedule F for 2013 petitioner reported $118,503 in expenses (including $71,895 for repairs and maintenance, $12,029 for taxes, and $8,475 for utilities).  Most of petitioner's deductions for the years at issue were for the costs of repairs of various buildings, such as electrical and plumbing repairs, mold removal, window replacements, and roof work.

## Discussion

The issue for decision is whether, as petitioner contends, his expenses in 2012 and 2013 to prepare for producing and selling maple syrup and blueberries are deductible under section 162 as expenses of a trade or business (or section 212 as expenses of an income-producing activity), or, as respondent contends, nondeductible startup expenses under section 195.

A.    Startup Expenditures

Petitioner contends that he was cultivating (in this case, thinning) the maple bush during 2012 and 2013 and that his expenses in 2012 and 2013 were deductible under section 162 or 212 and were not startup expenses. Respondent contends that petitioner's activities during 2012 and 2013 were nondeductible startup expenses under section 195 and that during those years petitioner had not yet commenced his trade or businesses of producing maple syrup and blueberries. We agree with respondent.

For expenses to be deductible under section 162 or 212, they must be associated with an active trade or business or other income-producing activity. A taxpayer may not deduct "start-up" expenses under section 162(a) or 212. Sec. 195; Toth v. Commissioner, 128 T.C. 1, 4 (2007). Startup expenses are, among other things, expenses incurred to create an active trade or business.

Sec. 195(c). The startup phase occurs before business operations have commenced. <u>McMillan v. Commissioner</u>, T.C. Memo. 2019-108, at *28; <u>McKelvey v. Commissioner</u>, T.C. Memo. 2002-63, <u>aff'd</u>, 76 F. App'x 806 (9th Cir. 2003). Expenses are not deductible under section 162 until the business is actually functioning and performing the activities for which it was organized. <u>Richmond Television Corp. v. United States</u>, 345 F.2d 901, 907 (4th Cir. 1965), <u>vacated and remanded on other grounds</u>, 382 U.S. 68 (1965); <u>see also</u> <u>Toth v. Commissioner</u>, 128 T.C. at 4; <u>Reems v. Commissioner</u>, T.C. Memo. 1994-253, 1994 WL 243475.

In <u>McKelvey</u>, we disallowed deductions claimed by a taxpayer who bought land for use as a tree farm but had not yet harvested any trees. In <u>McManus v. Commissioner</u>, T.C. Memo. 1987-457, <u>aff'd without published opinion</u>, 865 F.2d 255 (4th Cir. 1988), a taxpayer who had purchased various components to use in manufacturing and selling mud logging devices was not engaged in a trade or business because none of the mud logging devices had become operational. In neither of those cases had the taxpayer performed the activity for which the business was organized. Thus, neither activity had advanced beyond the startup phase.

Preparing a property to produce a commodity (such as maple syrup or blueberries) is not a trade or business or income-producing activity before sap is collected or blueberry bushes are planted. The facts in Reems are analogous to those present here. In Reems a taxpayer purchased land to start a logging business. After the taxpayer acquired the property he began to clear, repair, and build logging roads and to sell small batches of firewood, trees, and plants. Reems v. Commissioner, 1994 WL 243475, at *3. The costs of those activities during the years at issue were startup expenses in part because the taxpayer did not log any trees during the year at issue. Id. at *3-*4. In Heinbockel v. Commissioner, T.C. Memo. 2013-125, we held the taxpayers had not begun their vineyard business because they had not planted any vines. Petitioner did not plant any blueberry bushes before or during the years at issue. His costs of land clearing were startup expenditures.

Petitioner's activities performed during 2012 and 2013 were incurred to prepare the farm to produce sap and plant blueberries. Those are startup expenses under section 195 and may not be deducted under section 162 or 212.

B.     Petitioner's Contentions

Petitioner contends that thinning a maple bush on his land is a section 162 or 212 active business activity. Petitioner argues that a taxpayer is in the business

of farming if he or she cultivates orchards or groves and that thinning a maple bush on his land is cultivation. Petitioner cites Internal Revenue Service Publication 225, Farmer's Tax Guide. The first sentence of the publication during the years at issue stated: "[Y]ou are in the business of farming if you cultivate, operate, or manage a farm for profit either as owner or tenant." Similarly, we have said that a taxpayer not cultivating crops was not in a farming business. See Vianello v. Commissioner, T.C. Memo. 2010-17, 2010 WL 342905, at *7. Those appearances of the word "cultivate" are consistent with the other cases cited herein. That is, while cultivation of plants is an essential part of a trade or business involving production of commodities from those crops, cultivation, without more, is not sufficient to show that the activity has progressed past the startup phase.

Petitioner asserts that thinning a maple bush is a generally accepted industry practice. We accept that point, but following industry practice does not establish that an activity has progressed beyond the startup phase. Walsh v. Commissioner, T.C. Memo. 1988-242 (finding that the taxpayers were following industry practice for restaurants when they signed a lease and purchased assets to use in the restaurant, but they were still in the startup phase because they had not yet opened to the public), aff'd, 884 F.2d 1393 (6th Cir. 1989).

Petitioner cites <u>Toth v. Commissioner</u>, 128 T.C. 1, <u>Jackson v. Commissioner</u>, 864 F.2d 1521 (10th Cir. 1989), <u>aff'g</u> 86 T.C. 492 (1986), and <u>Blitzer v. Commissioner</u>, 231 Ct. Cl. 236 (1982), in support of the proposition that revenue is not required for a business to leave the startup phase and enter the active phase. We agree. During the years at issue, however, petitioner had not collected sap, installed any of the infrastructure needed to convert sap into syrup, or purchased any blueberry bushes. Many other steps remained in order for petitioner to complete the startup phase and collect revenues from maple syrup and blueberry production.

C.     Conclusion

Petitioner's expenses during 2012 and 2013 were startup expenses in preparation for producing maple syrup and blueberries under section 195 and are not deductible under section 162 or 212.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.