T.C. Memo. 2011-4


UNITED STATES TAX COURT



ERNESTINE FORREST, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24971-08.                    Filed January 4, 2011.



     R determined a deficiency in P's income tax for the
2005 tax year based on P's unreported dividend income and a
disallowed deduction for an IRA contribution.  In an amended
answer, R increased the determined deficiency by disallowing
an income tax withholding credit of $20,060.89 and Schedule
C business expense deductions of $29,942.74 for the 2005 tax
year.

     <u>Held</u>:  This Court does not have jurisdiction to decide
the withholding credit issue.  P is liable for the
deficiency arising from the disallowed Schedule C business
expense deductions.



Ernestine Forrest, pro se.

<u>Michael K. Park</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of a Federal income tax deficiency that respondent determined for petitioner's 2005 tax year.  After concessions by petitioner,[1] the issues left for decision are:

(1) Whether petitioner is entitled to a Federal income tax withholding credit of $20,060.89 for the 2005 tax year;

(2) whether petitioner is entitled to business expense deductions claimed on Schedule C, Profit or Loss from Business, of $29,942.74 for the 2005 tax year;[2] and

(3) whether petitioner is entitled to a deduction under section 1341 for amounts subtracted from her pension distributions during the 2005 tax year.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and the accompanying exhibits are hereby incorporated by this reference.  At the time she filed her petition, petitioner resided in California.

---

[1]Petitioner conceded receiving unreported dividend income of $90 for the 2005 tax year and that she is not entitled to an IRA contribution deduction of $4,500 for the 2005 tax year, which entirely disposes of the original issues in the notice of deficiency.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued a notice of deficiency on July 7, 2008, determining an income tax deficiency for petitioner's 2005 tax year of $459. Petitioner filed a timely petition with the Court on October 14, 2008, alleging a "substantial deduction which will wipe out the alleged deficiency". By an amendment to the answer, served on petitioner by respondent on April 29, 2009, respondent disallowed a withholding tax credit of $20,060.89 and Schedule C deductions of $29,942.74.

The State of California withheld $20,060.89 for Federal income tax from a termination of employment lawsuit settlement it made with and paid to petitioner. It also issued to petitioner a Form W-2, Wage and Tax Statement, for 2005 reflecting the withheld tax of $20,060.89 and the $172,071 settlement payment. Petitioner claimed a credit for the $20,060.89 of allegedly withheld tax on her 2005 Federal income tax return. She did not, however, include any of the $172,071 payment in her taxable income shown on her 2005 Federal income tax return.

Respondent's examining agent initially sought to tax the $172,071 settlement payment by increasing petitioner's 2005 Federal taxable income by that amount. Although the evidentiary record is sparse, it is apparent from each party's statements in Court and filed documents that petitioner eventually convinced respondent that, notwithstanding the Form W-2, she did not actually receive the $172,071 until 2006. Therefore respondent

did not, at the conclusion of the examination, seek to increase petitioner's 2005 Federal taxable income by the $172,071 amount of the settlement payment.

Respondemt's decision to exclude the $172,071 amount of the settlement payment from petitioner's 2005 Federal taxable income would seem to have the consequence of rendering petitioner's claimed $20,060.89 withholding credit on her 2005 Federal income tax return to be "an overstatement of the credit for income tax withheld at the source" within the meaning of section 6201(a)(3). If so, then, as we note below, "the amount so overstated which * * * [was] allowed against the tax shown on * * * [petitioner's 2005] return" could have been summarily assessed by respondent without being subject to deficiency procedures pursuant to section 6201(a)(3). However, respondent apparently neglected to do this. To address this evident oversight respondent instead sought to amend his answer to challenge the claimed $20,060.89 withholding credit for 2005.

Petitioner started collecting unemployment compensation in 2005. She also considered starting a solo law practice, a process that apparently began as far back as 2003. See Forrest v. Commissioner, T.C. Memo. 2009-228. She claimed, in connection with efforts to find work as a contract attorney, expenses for office supplies and other items. The claimed expenses were initially reported on Schedule A, Itemized Deductions, of her

2003 Federal income tax return but were subsequently claimed on Schedule C of her 2005 Federal income tax return as a business expense.

Petitioner reported no income from work as a contract attorney in either 2003 or 2005. The 2003 expenses which she had sought to recast as Schedule C business deductions at trial were rejected on account of the Court's finding that her work as a contract attorney was not an active trade or business. See Forrest v. Commissioner, supra. On Schedule C of her 2005 return, petitioner reported no income and claimed deductions of $29,942.74. Petitioner's planned solo law practice never made it past the startup phase to fruition. She acknowledged that none of her referrals in 2005 resulted in paying clients and that she never purchased malpractice insurance.

During 2005 petitioner was engaged in extensive litigation in connection with the decision by the California Department of Corporations to again terminate her employment in February 2004.[3] Petitioner explained that the State of California "had active litigation trying to get money back." Petitioner has incurred expenses arising from this litigation. Her claimed $29,942.74 Schedule C business expense deduction for 2005 included a $15,778

---

[3]We note that petitioner had previously been terminated from the California Department of Corporations in 2000 and was subsequently reinstated in March 2003 after filing suit against the State of California in 2003. We take judicial notice of these facts. See Forrest v. Commissioner, T.C. Memo. 2009-228.

deduction for "Litigation re: clear name and Establish Self professionally".

A trial was held in Los Angeles, California.  Following trial, the Court, with agreement of the parties, set a simultaneous briefing schedule of September 9, 2009, for opening briefs, and October 26, 2009, for reply briefs.  On September 11, 2009, petitioner filed a motion for an extension of time to file a brief.  The Court granted her motion and gave her until October 20, 2009, to file her opening brief and gave both parties until December 7, 2009, to file a reply brief.

On October 26, 2009, petitioner filed yet another motion requesting to extend time to file briefs and stating that she intended to "submit a Brief by Express Mail over the weekend for delivery on Monday, October 26, 2009".  The Court had still not received a brief from petitioner by November 16, 2009, when it denied her motion.  Subsequently, on February 1, 2010, petitioner filed a status report indicating she would soon complete her Los Angeles Superior Court trial matters and address her tax matters.  On April 16, 2010, the Court, still having received no opening brief from petitioner, entered an order that it would no longer wait for or accept briefs from petitioner in this case.[4]

---

[4]As she did in her companion Federal income tax case for 2004, Forrest v. Commissioner, docket No. 11513-08, tried separately at the same trial session, petitioner has followed a practice of requesting repeated extensions of time and then failing to file a brief.  We caution petitioner against abusing

(continued...)

OPINION

I.  Burden of Proof

As a general rule, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, the withholding credit and Schedule C deduction issues were not raised in the statutory notice of deficiency and are therefore new matters within the meaning of Rule 142(a).  Thus, as respondent has conceded, with respect to those issues, the burden of proof lies with respondent.  Because petitioner raised the issue related to the deductions for her pension repayments, she carries the burden of proof as to that issue.

II.  Whether Petitioner Is Entitled to a Federal Income Tax
     Withholding Credit of $20,060.89 for the 2005 Tax Year

Section 6213(a) allows the taxpayer to seek judicial review of a proposed deficiency before this Court.  Under section 6211(b)(1) a deficiency is determined "without regard to payment on account of estimated tax, without regard to the credit under

---

⁴(...continued)
our processes and remind her that sec. 6673(a)(1) allows us in our discretion to require the taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that "(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, or (C) the taxpayer unreasonably failed to pursue available administrative remedies".

section 31". Section 31 generally allows the taxpayer to claim a credit for Federal income tax withheld from wages for that taxable year. The amount of an overstated credit may be summarily assessed and is not subject to deficiency procedures. Sec. 6201(a)(3); Bregin v. Commissioner, 74 T.C. 1097, 1104-1105 (1980) ("[T]here is no indication that section 6214(a) was intended to provide him with an alternative method for recovering on such a claim. Furthermore, if the Commissioner is allowed to raise his claim in this proceeding, he would be allowed to recover on a claim that would otherwise be barred by the statute of limitations.").

Since the withholding credit issue is not a factor in determining the tax deficiency, we have no jurisdiction to consider it and therefore may not decide whether petitioner is entitled to a Federal income tax withholding credit of $20,060.89 for the 2005 tax year. We note that under section 6201 respondent may, if he acts timely, assess any overstated withholding credit as "a mathematical or clerical error" in the manner specified by section 6213(b).

III. Whether Petitioner Is Entitled to $29,942.72 of Schedule C Business Expense Deductions for the 2005 Tax Year

A. General Rules

Deductions are a matter of legislative grace, and the taxpayer must maintain adequate records to substantiate the amounts of any deductions or credits claimed. Sec. 6001 (the

taxpayer "shall keep such records"); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Taxpayers must maintain records relating to their income and expenses and must prove their entitlement to all claimed deductions, credits, and expenses in controversy. See sec. 6001; Rule 142(a); INDOPCO, Inc. v. Commissioner, supra at 84; Welch v. Helvering, supra at 115. However, as discussed above the withholding credit and Schedule C deduction issues were not raised in the statutory notice of deficiency, and, as respondent has conceded, with respect to those issues, the burden of proof lies with respondent.

Section 162(a) authorizes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940).

B. Petitioner's Schedule C Other Expense Deductions

1. Startup Expenditures

On her tax return for 2005, in connection with her alleged practice of law, petitioner claimed Schedule C other expense deductions for, among other items: "Business use of Telephone",

"Postage", "Supplies (toner cartridges, paper, clips, etc.)", "Copies", "Publications, seminars, training, travel", "Fees re: travel legal conventions and meetings, hotels", "Business associations provide networking, equipment use re: travel and other professional support". On Schedule C of her 2005 tax return, petitioner reported no income generated by her law practice but claimed $29,942.74 of deductible expenses, producing a loss of the same amount. Petitioner testified at trial that her solo law practice was a "fledgling effort." She wanted to "figure out what kind of work * * * [she] was going to do. A lot of it was making expenditures, making contacts, doing the networking".

On the basis of the record, including petitioner's testimony, we find that the expenses reported on Schedule C of her return for 2005, insofar as related to her legal practice, were not incurred in "carrying on" a business. The expenses were incurred before it became (if it ever did) a business or profit-seeking activity. See sec. 162; Toth v. Commissioner, 128 T.C. 1 (2007). Although "Section 162 generally allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * [,] Such expenses must be directly connected with or pertain to the taxpayer's trade or business that is functioning as a business at the time the expenses were incurred." Woody v. Commissioner,

T.C. Memo. 2009-93, affd. without published opinion No. 09-1193

(D.C. Cir., Dec. 16, 2010) (emphasis added).

Consequently, petitioner may not deduct any of those expenditures

for 2005.

       2.   <u>Legal Fees</u>

> It is well established * * * that, even though a
> taxpayer's employee status may be regarded as a trade or
> business, legal fees stemming from a taxpayer's employee
> status are not deductible in computing adjusted gross income
> but are to be treated only as miscellaneous itemized
> deductions, subject to the AMT and to a 2-percent floor.
> See sec. 62(a)(1) * * *.

<u>Kenton v. Commissioner</u>, T.C. Memo. 2006-13.

Included in petitioner's $29,942.74 of claimed business

expense deductions was a Schedule C business expense deduction

for "Litigation re: clear name and Establish Self

professionally".  This litigation arose from the decision by the

California Department of Corporations to terminate petitioner's

employment.  Because petitioner's litigation relates to her

status as an employee, she is not entitled to a Schedule C

business expense deduction.  Instead, petitioner may be entitled

to a Schedule A miscellaneous itemized deduction for such

litigation expenses.[5]  See <u>Kenton v. Commissioner</u>, <u>supra</u>.

---

[5]We note that under sec. 62(a)(20) as amended, effective
Oct. 22, 2004, "attorney fees and court costs" paid by the
taxpayer in connection with discrimination law suits "paid after
Oct. 22, 2004, with respect to any judgment or settlement
occurring after that date are allowed as a deduction in computing
adjusted gross income, with the result that they are not subject
to the AMT, and are not subject to the 2-percent floor."  <u>Kenton</u>
(continued...)

IV.  Whether Petitioner Is Entitled to a Deduction Under Section 1341 for Amounts Deducted From Her Pension Distributions During the 2005 Tax Year

Section 1341 provides a deduction for an item of income that was included in gross income in a prior tax year that was required to be repaid in a subsequent tax year.  The provision has three basic requirements:  (1) The item must have been included as gross income for a prior taxable year because "it appeared that the taxpayer had an unrestricted right to" it, (2) the "deduction is allowable for the taxable year [at issue] because it was established after the close of" the prior taxable year that the taxpayer did not have an unrestricted right to it, and (3) "the amount of such deduction exceeds $3,000".  Sec. 1341(a).  If all of these requirements are met, the taxpayer may deduct the item from the current years' taxes.  Id.

Petitioner reported pension distributions of $17,434.36 as income for the 2005 tax year.  She was required to make repayments on pension distributions from earlier tax years out of her current year's distribution.  Because petitioner claims that she had previously included the pension distribution that she was required to repay in some prior tax year and at which time it had

<hr>

[5](...continued)
v. Commissioner, T.C. Memo. 2006-13.  However, as petitioner has not included in her gross income for 2005 any proceeds from a judgment or settlement of the litigation in which she incurred the legal expenses, she is not entitled to deduct those fees under sec. 62(a)(20).

appeared that she had an unrestricted right to it, she is entitled to deduct, in 2005, the amounts repaid in 2005.

At trial petitioner proffered only three monthly distribution statements. These statements do not indicate whether the amounts listed under "recover overpayment" highlighted by petitioner were included or excluded from the gross pension distribution.[6] If petitioner's pension distributions were gross amounts, she might be entitled to a section 1341 deduction, provided she met the $3,000 deduction floor. If, however, amounts to cover repayments were deducted from or netted against petitioner's pension payment and also

_____

[6]Respondent objected to petitioner's monthly distribution statements' being admitted into evidence on grounds of relevance. We deferred ruling on the admissibility of those statements to give petitioner more time to gather additional documentation of the distributions as well as the statements for the missing months. Petitioner failed to submit any such additional documentation.

Fed. R. Evid. 401 defines "Relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The distribution statements are relevant to show that petitioner made repayments on her pension distributions from earlier tax years. However, we note that these documents constitute hearsay; and because they are not accompanied by any type of certification or witness identification, they do not fall within the business records exception to hearsay under Fed. R. Evid. 803(6) and 902(11). Respondent did not raise a hearsay objection at trial and thus waived it. See Fed. R. Evid. 103(a)(1). We now overrule the objection on the basis of relevance; however, we note that had these documents been denied admission, it would not have changed the result because petitioner failed to submit additional documentation to clarify whether the deductions had been included in gross distributions or had already been deducted.

deducted from her total Form 1099 yearend tax statement or other tax information reporting form, then she was already making the repayment with pretax income and a section 1341 deduction would in effect give her a second deduction. Petitioner presented no evidence that she had included the prior pension distributions in a prior tax year, nor that the deduction would have met the $3,000 floor. As discussed above, the burden of proof for this issue rests on petitioner. She has failed to carry her burden and is not entitled to a deduction under section 1341.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

under Rule 155.